UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

**Crisor A. Boyard,**
***aka* Crisor Boyard,**

Debtor.

Chapter 7
Case No. 1-13-44501-nhl
---------------------------------------------------------X
**Regis Munoz,**

Plaintiff,

v.

**Crisor A. Boyard,**

Defendant.

Adv. Pro. No. 1-13-01499-nhl
---------------------------------------------------------X

# DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**Attorneys and Law Firms**:

Lisa Cohen, Esq.
Ruff & Cohen PA
4010 Newberry Road
Suite 6
Gainsville, FL 32607
*Attorney for Regis Munoz*

Hersh Jakubowitz, Esq.
42-34 162nd Street
Flushing, NY 11358
*Attorney for Crisor A. Boyard*

NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

Regis Munoz (the "Plaintiff") brought an adversary proceeding against chapter 7 debtor Crisor A. Boyard (the "Defendant") seeking a determination that an arbitration award (the "Award") rendered against the Defendant on default is nondischargeable under § 523(a)(2), (4), and (6) of the Bankruptcy Code (the "Code"), and that the Defendant is ineligible to receive a discharge under § 727(c), (d), and (e). The Plaintiff now moves for summary judgment on its § 523 claims, asserting that the Award has collateral estoppel effect because the findings of fact and conclusions of law in the Award satisfy the elements of nondischargeability. The Defendant opposes summary judgment, arguing that the Award lacks sufficient factual findings to satisfy the elements of § 523(a), and that collateral estoppel is inapplicable to default judgments. For the reasons set forth below, the Plaintiff's motion for summary judgment is granted.

## I. BACKGROUND

The Plaintiff, an inventor residing in France, developed a battery charger but lacked the funds to capitalize on his invention. Award 2, ECF No. 16–1. On December 10, 2008 he entered into a limited partnership agreement with the Defendant to produce and market the invention. Partnership Agreement, ECF No. 18–1. Pursuant to their partnership agreement, the Plaintiff transfered all of his rights in the battery charger to the partnership, Avendale Investments, LLP. Award 2, ECF No. 16–1. In exchange, the Defendant promised the Plaintiff a 20% interest in the partnership, a 10% ownership interest in Innov–Nature (a French company), and royalty payments for every charger sold. *Id*. The Defendant also agreed to contribute $250,000 to the partnership. *Id*.

In 2010 the parties ceased operations as a limited partnership, and the Defendant formed a new entity, Avendale Technology, LLC ("Avendale"), to continue the business of marketing and selling the battery chargers. *Id*. at 3. The Defendant took a 50% interest in Avendale, while

the Plaintiff was given a 49% interest.[1] Avendale's operating agreement (the "Operating Agreement") is governed by Florida law, Operating Agreement 19, ECF No. 18–2, and provides that all disputes between members of Avendale are to be settled by "mediation prior to taking the Company Dispute to arbitration or court," *Id*. at 18. If a resolution through mediation cannot be reached, despite the parties' "good faith efforts to facilitate the mediation process," then the dispute will be "exclusively and finally resolved by arbitration . . . governed by the Rules of Commercial Arbitration of the American Arbitration Association." *Id*.

A dispute arose between the Plaintiff and the Defendant due to the Defendant's alleged inaction and failure to deliver on his promises. Award 3, ECF No. 16–1. After unsuccessful attempts to enter into mediation, the Plaintiff submitted the dispute to arbitration with the International Center for Dispute Resolution. During an initial scheduling conference call with Arbitrator Abigail Fessen, Esq. (the "Arbitrator"), the Defendant "specifically requested the [h]earing date of February 9, 2012," (the "Hearing") to which the Plaintiff agreed. *Id*. at 1. Written notice of the Hearing was then mailed to the Defendant. *Id*. The Plaintiff traveled from France to attend the Hearing in New York, but the Defendant failed to appear or to request an adjournment. *Id*. The Defendant explains that he traveled to New York to attend the Hearing, but was unable to find the location of the Hearing and eventually went home. Aff. in Opp'n 7, ECF No. 21.

After the Hearing, the Arbitrator issued the Award. The Arbitrator determined that the dispute was properly submitted to arbitration, although it was not first mediated, and that the mediation pre-condition in the Operating Agreement was either waived or breached by the Defendant due to his "pattern of deliberate delay, inconsistency, and obstruction for more than one year in response to Mr. Munoz's persistent attempts to engage in mediation." Award 1–2,

[1] A 1% interest was given to a third person, Cecilia Aubry, who is not a party to this adversary proceeding.

ECF No. 16–1. The Arbitrator found by clear and convincing evidence that the Defendant fraudulently induced the Plaintiff to transfer his rights in the battery charger to the partnership by promising him Innov–Nature stock, which proved worthless, and a $250,000 contribution that the Defendant did not have the ability or intention to make. *Id*. at 3–4. The Arbitrator also found by clear and convincing evidence that the Defendant converted $36,000.00 from Avendale's bank account for his personal use, and that the Plaintiff incurred legal fees and was delayed in developing his invention. *Id*. at 3. The Arbitrator voided the transfer agreement, returning all rights in the battery charger to the Plaintiff, and awarded the Plaintiff damages of $190,000.00 to accrue interest at 9% annually. *Id*. at 4.

The Circuit Court of the Ninth Judicial Circuit in Orange County, Florida (the "Florida Circuit Court") confirmed the Award in April 2013. Order, ECF No. 16–2. The Defendant filed his bankruptcy petition soon thereafter. The Plaintiff filed a $209,427.54 proof of claim in the bankruptcy case and commenced this proceeding for a determination that the amount owed to him under the Award is nondischargeable under §523(a)(2), (4), and (6) of the Bankruptcy Code, and that the Defendant is not entitled to a discharge under § 727(a)(2)(A), (a)(4), and (a)(6). The Defendant filed an answer denying all material allegations in the complaint and asserting affirmative defenses and counterclaims. The Plaintiff then moved for summary judgment, with respect to his § 523(a) claims (the "Motion").

The Plaintiff asserts that the Arbitrator made sufficient findings of fact to satisfy the elements of § 523(a)(2), (4), and (6), such that the Award is entitled to preclusive effect. Mot. for Summ. J. 9–11, ECF No. 16; Suppl. Mem. 6–7, ECF No. 26. The Plaintiff believes that the federal law of preclusion applies because the Award was made pursuant to the New York Convention of 1958 on the Recognition and Enforcement of Foreign Arbitral Awards, which was

adopted into the U.S. Code at title 9, §§ 201–208. *Id*. at 2–5. The Defendant agrees that federal preclusion law should apply, but argues that the elements of collateral estoppel under federal law are not satisfied. Aff. in Opp'n 3, ECF No. 21–1. The Defendant maintains that an identity of issues is lacking between the Award and the dischargeability elements because the Award fails to specifically make findings of fact. *Id*. at 3–5. The Defendant also contends that the issues were never actually litigated, and that a default judgment does not have preclusive effect under federal law. *Id*. at 5–7.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A). The following are the Court's findings of fact and conclusions of law to the extent required by Rule 52, as made applicable by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7052.

## III. DISCUSSION

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure (the "Rules"), which is made applicable to bankruptcy proceedings by Bankruptcy Rule 7056. Rule 56 provides in pertinent part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court's task is "to determine whether a genuine issue as to any material fact exists, not to resolve any factual issues." *In re Hanna*, 163 B.R. 918, 922 (Bankr. E.D.N.Y. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986)). A fact is material if it "might affect the outcome of the suit under the

governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Here, to decide whether the Plaintiff's adversary complaint presents any genuine issues of material fact, the Court must determine the Award's preclusive effect. This determination requires analysis of the effect of the Florida Circuit Court's confirmation of the Award, and the law of preclusion that should be applied to the Award.

**A. Confirmation of the Award by the Florida Circuit Court**

The Arbitrator derived her authority from the New York Convention of 1958 on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), which is codified at 9 U.S.C. §§ 201–208. A party to the arbitration has three years to seek confirmation of an arbitral award issued pursuant to the Convention. 9 U.S.C. § 207. "The district courts of the United States…shall have original jurisdiction over such an action or proceeding." 11 U.S.C. § 203; *Goel v. Ramachandran*, 823 F. Supp. 2d 206, 211 (S.D.N.Y. 2011). But, an arbitral award may also be confirmed in state court. *See Oh Young Indus. Co., Ltd. V. E & J Textile Group, Inc.*, No. B179884, 2005 WL 2470824 at *2 (Cal. Ct. App. Oct. 7, 2005) (affirming state court's confirmation of an arbitral award under the Convention); *see also Dial 800 v. Fesbinder*, 118 Cal. App. 4th 32, 49-50 (Ct. App. 2004). A defendant in a state court confirmation proceeding "may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States." 9 U.S.C. § 205.

In this instance, the Plaintiff sought confirmation of the Award in the Florida Circuit Court rather than in a district court. Because the Defendant did not seek removal of the confirmation proceeding, the Florida Circuit Court had jurisdiction to enter an order confirming

the Award. The findings in the Award are therefore entitled to the same treatment as any other judgment of the Florida Circuit Court, since confirmation of an arbitration award is "'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 132 (2d Cir. 2015) (citing *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)); *In re Drexel Burnham Lambert Grp., Inc.*, 161 B.R. 902, 907 (S.D.N.Y. 1993); *In re Clayton*, 168 B.R. 700, 705 (Bankr. N.D. Cal. 1994) (Once an arbitration award is confirmed, the judgment is as final as any other judgment of the issuing court, and future courts applying the award's findings must treat the award as if it had been rendered directly by the court that confirmed it.).

**B. Effect of the Florida Circuit Court's Confirmation**

Under the full faith and credit statute, "judicial proceedings . . . have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. A federal court must construe the preclusive effect of a prior state court judgment using the law of the state that issued the judgment. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Wharton v. Shiver (In re Shiver)*, 396 B.R. 110, 117 (Bankr. S.D.N.Y. 2008) ("[A] state court judgment must be given preclusive effect, at least for collateral estoppel purposes, in a subsequent federal court proceeding if the state in which the judgment was rendered would do so.").

In *Shiver*, a New York bankruptcy court gave collateral estoppel effect to a Florida state court default judgment for fraud. *Shiver*, 396 B.R. 110. The bankruptcy court found that the elements of § 523(a) were identical to the findings in the state court judgment, and ruled on summary judgment that the debt was nondischargeable. *Id*. Where a state court has confirmed an arbitration award, the outcome is no different—the judgment of confirmation is entitled to full

faith and credit in a subsequent federal court proceeding. *In re Molina*, 228 B.R. 248, 250 (B.A.P. 9th Cir. 1998).

Accordingly, the confirmation judgment issued by the Florida Circuit Court is a final judgment entitled to full faith and credit in this proceeding. This Court therefore views the findings in the Award as if they were rendered directly by the Florida Circuit Court, and consequently applies Florida's law of preclusion.

**C. Collateral Estoppel Under Florida Law**

Under Florida law, "[c]ollateral estoppel is a judicial doctrine that prevents identical parties from relitigating issues that have previously been decided between them." *Florida Bar v. Clement*, 662 So.2d 690, 697 (Fla. 1995); *Monyek v. Klein*, 329 So. 2d 25, 26 (Fla. Dist. Ct. App. 1976) ("[P]arties are estopped from litigating in a second suit points and questions which were common to both the first and second causes of action and which actually were adjudicated in the prior litigation."). The elements of collateral estoppel require that

> (1) the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case.

*Shiver*, 396 B.R. at 124; *In re St. Laurent*, 991 F.2d 672, 676 (11th Cir. 1993); *In re Bentov*, 514 B.R. 907, 912–13 (Bankr. S.D.Fla. 2014).

**1. Identity of Issues**

The first element of collateral estoppel under the Florida standard requires that the issues decided in the prior proceeding be identical to the issues raised in the present proceeding. The Plaintiff asserts that the factual and legal findings in the Award are identical to certain elements

of § 523(a)(2), (4), and (6).[2] Specifically, the complaint alleges that the elements of false representation and actual fraud under § 523(a)(2), embezzlement under § 523(a)(4), and willful and malicious injury under § 523(a)(6) are satisfied.

A prior adjudication may have preclusive effect in a subsequent dischargeabilty proceeding if the elements of the claims in the prior proceeding are identical to the elements of § 523(a). *Grogan v. Garner*, 498 U.S. 279, 284 (1991). The Defendant contends that because the Arbitrator did not "clearly delineate findings of fact and conclusions of law," the Award, cannot have preclusive effect in this proceeding. Opp'n to Mot. 5, ECF No. 21–1. It is true that "[a]pplication of the estoppel following arbitration . . . may be problematic because arbitrators are not required to provide an explanation for their decision." *Postlewaite v. McGraw-Hill,* 333 F.3d 42, 48–49 (2d Cir. 2003) (citing *Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 203 (1956) ("Arbitrators … need not give their reasons for their results.")). An arbitrator's failure to make explicit findings of fact is not necessarily fatal to an award's preclusive effect, so long as findings of fact are "'necessarily implied from the nature of the claim and award.'" *In re Zangara*, 217 B.R. 26, 31 (Bankr. E.D.N.Y. 1998) (citing *Universal American Barge Corp. v. J–Chem, Inc.*, 946 F.2d 1131, 1137 (5th Cir. 1991). But if an arbitrator fails to make even implied

---

[2] Section 523(a) provides in pertinent part:

> A discharge…does not discharge an individual debtor from any debt—
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; (B) use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive;
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C. § 523(a)(2), (4), (6).

findings of fact, however, the arbitration decision is ambiguous and the identity prong is not satisfied. *Ufheil Const. Co. v. Town of New Windsor*, 478 F. Supp. 766, 768–69 (S.D.N.Y. 1979).

Here, the Arbitrator explicitly made findings of fact and conclusions of law. Although she did not create a separate "Facts" section–heading, the Award is clear that its factual findings are made pursuant to the sworn testimony given, and documentary evidence submitted, at the Hearing. Similarly, the Award contains conclusions of law as to the Defendant's actions, including fraudulent inducement and conversion, all by clear and convincing evidence, although it does not contain a "Law" section. The Award's findings are therefore entitled to preclusive effect in this proceeding.

The Court finds that an identity of issues exists between the findings of fact in the Award, and the elements of false representation under § 523(a)(2)(A) and embezzlement under §523(a)(4).

**a. *False Representation Under § 523(a)(2)(A)***

A claim for false representation under § 523(a)(2)(A) is established if the plaintiff shows that (1) the debtor expressly made a false or misleading statement either orally or in writing; (2) with intent to deceive; and (3) which was made to induce the creditor to convey money or property. *Am. Honda Fin. Corp. v. Ippolito (In re Ippolito)*, Adversary No. 12–8403–ast 2013 WL 828316, at *5 (Bankr. E.D.N.Y. Mar. 6, 2013). A cause of action based on "false representation requires an express misrepresentation or statement, either written or oral." *Id*. A defendant's failure to disclose relevant information to the plaintiff generally constitutes a misrepresentation under § 523(a)(2)(A). *Indo–Med Commodities, Inc. v. Wisell (In re Wisell)*, 494 B.R. 23, 36-37 (Bankr. E.D.N.Y. 2011).

The Award satisfies the three elements of false representation. As to the first element, the Arbitrator found that the Defendant made repeated misrepresentations to the Plaintiff regarding his intent to invest money into the development and marketing of the battery charger, and regarding transfer of the Innov-Nature shares to the Plaintiff. Transfer of the Innov-Nature shares was also provided for in the written agreement between the parties. The Defendant therefore made a false or misleading statement both orally and in writing.

The Award satisfies the two remaining elements of intent and inducement by its finding that the Defendant's promise to transfer the Innov-Nature stock constitutes "fraudulent inducement." In dischargeability proceedings, a prior ruling's finding of fraudulent inducement will have collateral estoppel effect if the elements of fraudulent inducement under the relevant state law standard are identical to the elements of § 523(a). *See In re Sikorski*, 239 B.R. 661 (Bankr. D.Conn. 1999). Under Florida law, the elements of fraud in the inducement are "(1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the *intent* by the person making the statement that the representation will *induce* another to act on it; and (4) reliance on the representation to the injury of the other party." *Lance v. Wade*, 457 So.2d 1008, 1001 (Fla. 1984) (emphasis added); *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010); *see also Belmac Hygiene, Inc. v. Belmac Corp.*, 121 F.3d 835, 839 (2d Cir. 1997) (adopting the Florida standard). Therefore, the Arbitrator's finding of fraudulent inducement necessarily implies the elements of intent and inducement, and no genuine issues of material fact exist as to any element of "false representation" under § 523(a)(2)(A).

**b.** ***Embezzlement Under § 523(a)(4)***

Embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been intrusted [sic], or into whose hands it has lawfully come." *Moore v. United States*, 160 U.S. 268, 269, (1895); *Great Am. Ins. Co. v. Graziano (In re Graziano)*, 35 B.R. 589, 594 (Bankr. E.D.N.Y. 1983). Embezzlement requires a showing that "'(1) the debtor rightfully possessed another's property; (2) the debtor appropriated the property for use other than the use for which the property was entrusted; and (3) the circumstances implied a fraudulent intent.'" *Wisell*, 494 B.R. at 40 (Bankr. E.D.N.Y. 2011) (citing *In re Guthier*, No. 09–50008, 2010 WL 1443989, at *6 (Bankr. N.D.N.Y. Apr. 9, 2010)). A partner or employee who diverts a corporation's funds for his or her own use commits embezzlement within the meaning of § 523(a)(4). *See Race Place of Danbury, Inc. v. Scheller (In re Scheller)*, 265 B.R. 39, 54 (Bankr. S.D.N.Y. 2001); *Graziano*, 35 B.R. at 595.

Here, the Award's factual findings satisfy the elements of embezzlement. The Defendant was Avendale's majority shareholder, tasked with developing and marketing the battery chargers. Rather than spend money from Avendale's account solely for this purpose, he converted $36,000 for various personal uses. As set forth throughout the Award, the Defendant's conduct and dealings with the Plaintiff strongly imply a fraudulent intent. The Court therefore finds that no genuine issue of material fact exists with respect to any element of embezzlement under § 523(a)(4).

**2. Actual Litigation**

Under Florida law, a judgment obtained by default is entitled to preclusive effect. *In re Itzler*, 247 B.R. 546, 550–554 (S.D.Fla. 2000). Several "courts interpreting Florida law have reached the same conclusion: A default judgment satisfies the actually litigated element under

Florida collateral estoppel law." *Bentov,* 514 B.R. at 913. Even a "pure default satisfies the fully litigated element." *Shiver*, 396 B.R. at 125 (quoting *Itzler,* 247 B.R. at 554 (Bankr. S.D.Fla. 2000) (The fact that the debtor "did not participate at all in the state court action does not change the fact that the issue…was fully litigated under Florida collateral estoppel principles.")). In this case, the second collateral estoppel element of actual litigation is satisfied, despite the Debtor's absence at the Hearing and the entry of the Award on default.[3]

**3. Prior Determination was Critical and Necessary**

Under the third prong of the Florida collateral estoppel standard, estoppel may only attach if the findings in the prior proceeding were a critical and necessary part of the judgment. This requires that the judgment "distinguish as to which of two or more independently adequate grounds is the one relied upon…." *St. Laurent*, 991 F.2d at 676. Without this distinction, the prior judgment may not have preclusive effect because "it is impossible to determine with certainty what issues were in fact adjudicated …." *Id*. But, where a default judgment is based on multiple independent grounds, all allegations may be considered critical and necessary since every allegation against the defendant is deemed admitted when the default judgment is entered.

[3] Although the Court finds that it must apply the Florida collateral estoppel standard, the Court notes that it would have reached the same conclusion had it applied the Federal collateral estoppel standard as argued for by the parties. Collateral estoppel under federal law applies where: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *In re PCH Associates*, 949 F.2d 585, 593 (2d Cir. 1991); *Drexel Burnham Lambert Grp.*, 161 B.R. at 908. As a general matter, "[w]here a prior judgment has been obtained by default, there is no actual litigation of the issues and accordingly, no collateral estoppel bar." *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 415 (Bankr. S.D.N.Y. 2003) (*citing Arizona v. California*, 530 U.S. 392, 414 (2000). But an exception exists where "the claims asserted…in the present and prior actions are closely enough related to justify the conclusion that the defendant should have foreseen the consequences in the present action of his failure to litigate his defenses in the prior action." *U.S. v. Martin*, 395 F.Supp. 954, 959 (S.D.N.Y. 1975). Where the defendant appeared in the first proceeding, but failed to fully contest the merits at trial despite having sufficient incentive to litigate, the exception applies, and collateral estoppel may attach to the first proceeding. *In re Sloan*, No. 880–08027–18, 1983 WL 35487 at *4 (E.D.N.Y. July 13, 1983) (finding that collateral estoppel applied in a nondischargeability proceeding where the debtor had appeared in the early phases of a prior litigation, but subsequently defaulted and did not participate at trial). Here, the Defendant participated in the early phases of the arbitration proceeding. The claims in this proceeding closely match the claims in the prior proceeding, and the Defendant should have foreseen the consequences of failing to litigate. The exception to the Federal collateral estoppel standard is therefore met, and the Award's findings would have preclusive effect in this proceeding under the Federal standard as well.

*In re Vickers*, 247 B.R. 530, 535–36 (Bankr. M.D.Fla. 2000); *In re Rosario*, 6:14–bk-01382–ksj 2015 WL 232427 at *2 (Bankr. M.D.Fla. Jan. 13, 2015).

Here, the Award was entered on default, and all allegations against the Defendant are deemed admitted. But even without this constructive admission, the Arbitrator was clear as to which allegations she relied on in rendering the Award and in directing payment of damages. The Court is therefore convinced that all of the Arbitrator's findings that the Plaintiff relies on in this proceeding were critical and necessary to the Award's determination.

**4. Standard of Proof**

Under Florida law, a prior judgment may not be given preclusive effect if the standard of proof in the prior action was less onerous than the standard applied in a subsequent action. The preponderance of the evidence standard applies in this proceeding, as it does in all dischargeability proceedings. *Grogan*, 498 U.S. at 287; *Shiver*, 396 B.R. at 119. The Arbitrator's findings were based on the higher standard of clear and convincing evidence. Where a prior judgment is based on the more stringent clear and convincing evidence standard, it is entitled to preclusive effect in a subsequent proceeding applying the less stringent preponderance of the evidence standard. *Shiver*, 396 B.R. at 119. Therefore, the fourth element of the Florida collateral estoppel standard is satisfied.

## IV. CONCLUSION

For all the reasons stated above, the Plaintiff's motion for summary judgment on the issue of nondischargeability is granted. The debt is nondischargeable under § 523(a)(2)(A) and (a)(4). A separate order will issue.

**Dated: September 24, 2015**
**Brooklyn, New York**

**Nancy Hershey Lord**
**United States Bankruptcy Judge**